Mr Justice M’Lean
 

 delivered the opinion of the Court. ■
 

 This is an appeal from the decree of the circuit court for the district of South Carolina.
 

 In their bill the complainants ask the court- to set aside or
 
 *57
 
 postpone a judgment for 30,000 dollars, confessed by Gillett in favour of Higginbottom and Provost, on the ground of fraud; and that certain moneys made by execution on a judgment subsequently obtained by the complainants, be' directed to be paid over in satisfaction of such judgment.
 

 The judgment for 30,000 dollars was confessed in 1819, on which executions were regularly issued; from time to time and entered in the clerk’s office; so as, under the laws of South Carolina, to bind the property of the defendant.
 

 The appellant insists that this judgment, which was held to be valid by the circuit court, should.be set aside: because- the promissory note on which the judgment was confessed, was given without consideration; and that the judgment must consequently be declared void, or postponed to the demands of bona fide creditors.
 

 Prom the’ facts of the case it appears that William S. Gillett was the acting executor of the estate of his father, and, that under the will he sold the property and became the purchaser of it, to a much larger amount than the sum for which judgment was confessed. He was then engaged in mércantile business, and had other property than that which he purchased at this sale; and the judgment was confessed tp secure the payment of the purchase money to the brothers and sisters of the defendant, who were the devisees in the will.
 

 This sale having been made by a trustee to himself, must have been set aside and'annulled on the application of the cestui que trust, but no such application being made, it cannot be treated as a nullity, ás it regards strangers to the transaction.
 

 The appellants'insist that the plaintiffs in the judgment had no knowledge of it at the time it’was
 
 entered;
 
 that the amount to which the devisees were entitled had not been ascertained ; that false representations were made by Gillett, subsequent to this judgment, as to the extent of his property, through which, the complainants were induced to give time on the judgment entered in their behalf; and that these facts are evidence of fraud.
 

 The evidence does not show that at the time the judgment was confessed, Higginbottom and Provost had any knowledge of it; but this is not deemed material, as they subsequently recognized the trust and acted under it. Nor is it essential to
 
 *58
 
 the validity of the judgment, that the distributive shares of the devisees should have be.en ascertained, provided they exceed in amount the sum for which judgment was entered. And this appears to be the fact, from a final adjustment of the executor’s account.
 

 ■ The false representations by Gillett, respecting the extent of his property, if true, as charged by the complainants, could not affect the previous judgment, if entered in good faith. But, connected with other facts, they may go to show, in its true light, the- conduct of the defendant. If he represented his property as wholly unincumbered, after the judgment for 30,000 dollars .had been confessed ; it would show a design on his part, to practise a fraud on the complainants, and might cast a suspicion over the first judgment. But these representations are not proved, as alleged in the bill. They were not, as made by the defendant, so incompatible with the facts of the case, as not to be accounted for by a somewhat partial estimate of the value .of his property, free from motives of fraud. The defendant subsequently became a bankrupt, but this was produced by various occurrences stated in his answer, which were not and. could not be foreseen.
 

 Shortly after the purchase, it appears the defendant was solicitous to secure the devisees, and he consulted counsel as to the best mode of effectuating this object. A mortgage was at first suggested, but afterwards a judgment was deemed preferable. This mode, it seems, is frequently adopted in South Carolina, to secure the payment of money. A judgment being entered, it is only necessary to issue an execution
 
 from
 
 term to term, which may remain in the clerk’s office, to create and continue a lien on the personal property of the defendant.
 

 As a matter of form, a note was executed by the defendant for 30,000 dollars, and this was made the foundation of the judgment. Was this note given without consideration
 
 1
 
 The defendant had purchased the property of the infant devisees, to a greater amount than that for which the note was executed. And was not the executor bound by every consideration arising from the agency he exercised, and the relation in which he stood to the devisees, to secure for their benefit the purchase money
 
 1
 

 They were infants, and consequently incapable of protecting
 
 *59
 
 their own interests^ The defendant was enriched by the pur- , chase of their property, to . a greater amount than the 30,000 dollars. ■ And if by the eonditiops of the sale, time was to bp. given for the payment of the money, that circumstance does not make either the .note or the judgment-fraudulent,. The judgment was intended to operate as a security for the payment of the money, and the defendant was bound in good faith to give this security. Had he failed in this respect, he would have been guilty of a most aggravated fraud, .against his infant brothers and sisters, whose property had been placed at his disposal.
 

 But the'áppellants contend, if a judgment may be taken to cover a future debt, the intent should appear on the face of the proceedings, or at all events, be evidenced by a contemporary written declaration. That in this ci.se, the judgment is assumed as a security for a debt to third persons not named in the proceedings, and whose interest in the judgment can only, be proved by parol evidence.
 

 No written declaration of' the trust, made at the time judgment was entered, is in evidence; but the counsel who pro-, cured the judgment swears that at the same time, he thinks he wrote or sketched off, a draft of a declaration of the.trust, upon which the judgment was given, to be signed by Higgin-bottom and Provost; and his impression has always been that such a paper was executed; that in taking the judgment, he acted for the children of Doctor Giljett; and that William S'. Gil-Iettj the defendant, expressed apprehensions that the judgment, at some future period, might be used to his injury and .contrary to his intention, and to obviate that difficulty,.it was concluded that a declaration of the trusts upon which it was given, should be signed by' Higginbottom and Provost. '
 

 From this evidence, it is extremely probable that a declaration of trust was executed at the time of the judgment, or shortly afterwards; but whether this Was done or not, the trust is clearly established by the evidence, and the transaction is not impeachable under the statute of frauds.
 

 If, as contended by the appellants, the judgmént was confessed by the appellee with a view of covering his property from his creditors, it would have been fraudulent. And if he had fexpressed to no one the object of the trust, the confession
 
 *60
 
 of a judgment for so Large a sum, to persons who bad no claim against him, would be evidence of fraud. ¡But there are no facts or circumstances connected with the entry of the judgment, which cast a suspicion of a fraudulent intent by the defendant.
 

 ■ It is insisted that this judgment is void, as it gave a .preference to certain creditors .and tended to delay others.
 

 There was no unjust or illegal preference in the case, and it ■is not seen how creditors were delayed by the judgment.. It did not prevent any creditor from bringing suit'and obtaining judgment and execution. This was done by the appellants, and a large sum of money was made on their execution, by a sale of the defendant’s property. • This proceeding was in no respect embarrassed by the previous judgment for the benefit of the infant devisees of Doctor-Gillett., But that judgment having been kept in force by the issuing of executions from term to term, the money made under the junior judgment must be applied in discharge of the prior lien. There is no injustice or hardship in this. After the first judgment shall be paid, any money collected from the defendant, by execution,'would of course be paid on the judgment of the appellants.
 

 But the counsel of the appellants contend, that the continued possession by the defendant of the property, on which the executions under the. first judgment operated as a lien, is conclusive evidence of fraud. And a number of/authorities are cited to show that where an absolute bill of sale of
 
 property is made,
 
 and thfe possession does not accompany the deed, but remains with the vendor, the transfer is not only voidable, but is absolutely void.
 

 The authorities referred to. seem to have no direct application to the case under consideration. The judgment does not purport to transfer the property of the defendant, nor was it intended to produce this effect. Connected with the executions which were issued, a lien was created; and this was not only the fair and legal effect of the proceeding, but the one which the parties to the transaction intended to secure.
 

 The posses i n of the property by the defendant was perfectly consistent with the judgment, and affords no evidence of fraud. It was like every other case of judgment and execution, which bind the real and personal property of the defend
 
 *61
 
 ant, though in his possession.. By .the laws of South Carolina, this lien may be continued for any time, notExceeding twenty years.-
 

 No one could have been misled by this- judgment. It was entered on the public record of the district, and.^he executions which were issued on it. were duly noted on thfe clerk’s docket, and these constituted the lien under the usages of South Carolina. It was therefore unnecessary to express on the record or in any ofher manner, what the effect of these proceedings would be.
 

 But it is contended that the lien se[ up' under these proceedings, cannot be sustained, as it covered the entire property of the defendant, and that this must be considered evidence of fraud.
 

 The lien, it is true, extended to the entire property of the defendant, within the state of South Carolina; but it could at any time be discharged by the payment of the judgment. This liep,.therefore, neither withdraws the property of the defendant from the reach of his creditors, nor delays the legal enforcement of their claims.
 

 The circuit court, with the consent of parties, directed the sale of the entire property of the defendant; and as the proceeds of this sale fall many thousand dollars bélow the judgment, and a still greater-sum below the amount the executor owes the devisees, it cannot be necessary to examine some of the principles settled by the circuit court preparatory to a final decree. We think the application made of the money arising from the sale, by the final decree of the court below, was right; and it is aifirmed. The bill of the complainants must therefore be dismissed with costs.
 

 This cause came on to be heard on the transcript of the record from the circuit court of the United States for the district of South Carolina, and was argued by counsel; on consideration whereof, it is ordered, adjudged and decreed, by this cofirt that the decree of the said circuit court in this cause be, and the same is hereby aifirmed with costs.