WILLIAM, E. HUTCHINS, administrator *de bonis non, vs.*
LURA F. MEAD.

Suffolk.     November 13, 1914. — February 27, 1915.

Present: RUGG, C. J., BRALEY, DE COURCY, & CROSBY, JJ.

*Husband and Wife. Fraud. Insolvency. Trust,* Resulting. *Equity Jurisdiction,* Fraud as against creditors. *Equity Pleading and Practice,* Appeal.
*Evidence,* Presumptions and burden of proof.

In considering this suit in equity on an appeal from a decree made by a single
justice who heard the case without oral evidence upon a stenographic report
of evidence in another proceeding and certain exhibits, *it was said* that there
was no presumption in favor of the finding of the single justice and that, so
far as the evidence was concerned, this court stood where he had stood when
the decree was made.

Statement by RUGG, C. J., of the principles of law which under the common law
and St. 13 Eliz. c. 5 govern the conveyance of property by an insolvent husband
to his wife in recognition of a trust, and which determine whether such convey-
ance is made with intent to defeat, delay and defraud creditors or is made in
execution of a valid trust.

In a suit in equity against a woman by the administrator of her husband's es-
tate, which was insolvent, to set aside certain conveyances made by the in-
testate to the defendant through an intermediary which were alleged to have
been fraudulent against his creditors at common law and under St. 13 Eliz.
c. 5, there was evidence which warranted findings that the defendant had
received from her kindred by inheritance or legacies considerable sums of
money from time to time, out of which she made advances to her husband;
that he had invested some of the money so received in the purchase of a tract
of land, the title to which was taken in his name; that the investment had
proved to be profitable and he had invested its proceeds in two other parcels of
land, again taking title in his own name; that he recognized the land as·the
defendant's in each instance, and that, when insolvent, he conveyed the two
last named parcels through an intermediary to the defendant. It did not ap-
pear that the intestate knew that he was insolvent when he made the convey-
ances. His debts were chiefly in connection with a large contracting and
building firm of which he was a member, which at the time of his death had
a number of unfinished contracts involving large sums of money. It did not
appear but that, if he had lived, the profits on these contracts might have
made the firm solvent. *Held,* that a decree dismissing the bill should be sus-
tained, because findings were warranted that the conveyances in question
were made *bona fide* in execution of resulting trusts, and were not made with
intent to hinder, delay or defraud creditors.

RUGG, C. J.     This is a suit in equity by the administrator
*de bonis non* of the insolvent estate of the deceased husband of

the defendant, to set aside conveyances of two parcels of real estate made by the decedent to the defendant through an intermediary something less than a year before his death. The cause comes before us on appeal from a final decree dismissing the bill entered by a single justice of this court,* after considering a stenographic report of evidence taken in another proceeding and certain exhibits, no oral testimony having been heard by him. In reviewing the facts, this court stands where the single justice stood. *Harvey-Watts Co.* v. *Worcester Umbrella Co.* 193 Mass. 138, 143.

The principles of law which under the common law and St. 13, Eliz. c. 5, govern the conveyance of property by an insolvent husband to his wife in recognition of a trust, and which determine whether such conveyance is made with intent to defeat, delay and defraud creditors, or is made in execution of an outstanding valid trust, have been set forth at length in *Briggs* v. *Sanford*, 219 Mass. 572, where the authorities are collected. It is not necessary now to do more than summarize them. A husband may hold the title to property in his own name, which in truth belongs to his wife, upon a valid trust for her benefit. Property originally belonging to her, which she has handed over to him and which has been kept by him for a considerable period, may be found to constitute such a trust. If she has permitted him to hold it so that he has been enabled to and has in fact gained credit on the strength of his apparent ownership thereof, she may be estopped to claim it. Where the husband has recognized the existence of the trust and has discharged his fiduciary obligation by transferring the corpus of the trust to the wife, there is a sufficient consideration to support the conveyance. In a sense the trust has been executed and it is not necessary to inquire whether it might have been enforced at the suit of the wife. The relation between a husband and wife is such that transactions between them should be scrutinized with the greatest care to determine whether they are made in good faith, upon a sufficient consideration, and in satisfaction of a genuine trust. It is to be presumed that the natural result of one's acts are intended, and if the transfer is made without the necessary elements to establish a true trust, then it is in

* *De Courcy, J.*

fraud of creditors even though the express design to hinder, delay and defraud creditors may not have been consciously formulated.

A careful examination of the evidence leads to the conclusion that the conveyances here in question were not made in fraud of creditors. There was testimony which was not contradicted and which was supported by some contemporaneous documents, to the effect that the wife by inheritance or legacy received from her kindred considerable sums of money from time to time, out of which advances were made to the husband. In 1891, $1,000 was handed to him. This was invested in the purchase of a tract of land of considerable size, which was divided into lots, and sold. This purchase was made in association with one Smith, with whom there was then discussion about the money being that of the defendant, but because Smith preferred to have the transaction conducted with Mr. Mead, the conveyance was taken in his name although the investment then was recognized as that of the defendant. The venture resulted ultimately in a net profit above the initial investment of approximately $6,480. There was some evidence tending to show that the decedent invested the profits of these transactions in the two parcels of real estate, which he conveyed to the defendant in 1908, (in this proceeding sought to be set aside as fraudulent) and that he contemporaneously and at other times before the conveyance referred to these properties as belonging to his wife. This transfer was in substance putting in the name of the defendant real estate which ought to have been conveyed to her in the first instance. Other sums of money belonging to the wife were transferred by her to him as follows: In 1887, $621.42, in 1906, $882.48, and in 1907, $950. There was evidence that the debts of the deceased exceeded his assets at the time of these conveyances. But these debts were chiefly, if not wholly, in connection with a contracting and building partnership of which he was a member and which had continued doing a large business for many years, and which at the time of his death had a number of contracts involving considerable sums of money, some having been taken apparently after these conveyances. It does not appear that the deceased knew that his liabilities exceeded his property at the time of the conveyances, nor does it appear that but for his death the profits on pending contracts might not

have made the firm solvent in fact. The conclusion follows that these conveyances are not shown to have been made with intent to hinder, delay or defraud creditors.

*Decree dismissing bill affirmed without costs.*

*F. N. Nay,* (*J. L. Bates* with him,) for the plaintiff.

*R. B. Stanley,* for the defendant.