METROPOLITAN LIFE INSURANCE COMPANY *vs.* HERMAN C. POLLACK & others.

Suffolk.     February 9, 1955. — May 2, 1955.

Present: QUA, C.J., WILKINS, SPALDING, & WILLIAMS, JJ.

*Personal Property*, Ownership.     *Trust*, What constitutes, Oral trust. *Fraudulent Conveyance*.

Findings in a suit in equity, that shares of stock in corporations issued in a husband's name for business reasons upon the organization of the corporations were so acquired with money belonging to his wife and money lent to her and that from the beginning she was intended to be and was the true owner of certain of such shares subsequently transferred by him to her, justified conclusions that the shares so transferred had been held by him upon an oral trust for her since their issuance and that the transfer to her was not in fraud of his creditors.

BILL IN EQUITY, filed in the Superior Court on December 15, 1952.

The plaintiff appealed from a final decree dismissing the bill entered after hearing by *Brogna*, J.

*Bernard Kaplan,* (*Isadore M. Libman & Lester S. Cramer* with him,) for the plaintiff.

*Alfred Sigel,* (*David M. Brackman* with him,) for the defendants.

WILLIAMS, J.   This is a bill in equity by a judgment creditor of the defendant Herman C. Pollack to reach and apply in payment of his indebtedness shares of the corporate stock in two Massachusetts corporations, Adams Motors, Inc., and Granite Gallivan Realty Corp., of which he is alleged to be the owner.   The bill was filed on December 15, 1952.   By supplemental bill filed by leave of court February 5, 1953, in which Antoinette, the wife of Herman, is joined as a party defendant, it is alleged that certain of the shares referred to in the bill have been transferred to her with the intent to hinder, delay, and defraud the creditors of Herman.

The evidence and findings of material facts are reported. From these findings it appears that the plaintiff has an unsatisfied judgment against Herman in the amount of $4,- 549.50 entered in the Supreme Court of New York on December 8, 1933.   In 1945 Herman, to whom hereinafter we shall refer as the defendant, with one Goldman and others negotiated with the Chrysler Corporation for a Dodge automobile agency in Boston.   A promise of the franchise for the agency having been obtained, Adams Motors, Inc., was organized in December of that year with capital stock of 750 shares preferred and 750 shares common.   Three hundred shares of each class were issued to the defendant and the balance of the shares to Aaron J. Rosenberg, William A. Mason, and Thomas P. Bain.   To obtain the agency franchise "it had to be made to appear" that the defendant had a substantial interest in the corporation and was to give his full time to the business.   "Consequently, all the papers, documents and records were made to so appear, and . . . the defendant so acted as to give color thereto." To assist in carrying on the business of Adams Motors, Inc., Rosenberg, Mason, and Bain organized Granite Gallivan Realty Corp. in January, 1946.   Its stock was all common

and of the 750 shares 300 were issued in the name of the defendant. No money of the defendant was used in the issuance or purchase of any shares of stock issued in his name in either corporation. The money so used belonged to his wife or had been lent to her. "[A]ll concerned knew the situation, and . . . it was intended from the beginning that the shares of stock standing superficially on the record in the name of the defendant . . . belonged to his wife . . . and to others who had advanced money therefor. . . . [P]rior to the bringing of this bill such shares of stock which had been in the name of the defendant had been transferred as a matter of record to the lawful owners thereof, and . . . there were no shares in the defendant corporation[s], either standing in the name of or owned by the defendant when this bill was brought."

"No excise stamp was procured, affixed to, or cancelled from the transfers of the certificates of the stock from the name of the defendant . . . to his wife . . . and to other real owners thereof."

The judge found that the acts described were not in fraud of the defendant's creditors.

A final decree was entered dismissing the bill with costs and the plaintiff appealed.

A careful examination of the exhibits and the testimony leads to the conclusion that the findings of the judge were not plainly wrong. It is peculiarly a case where the accuracy of the findings depends upon the credibility of the oral testimony and where the conclusions of the judge who saw and heard the witnesses must be given due weight. *Boston* v. *Santosuosso*, 307 Mass. 302, 331–332. There was evidence that the defendant, who had been a practising attorney in New York, lost his money in the financial depression of the thirties and became heavily indebted. In 1942 he and his wife went to Mississippi and for about two years operated a recreation center there, in the name of the wife, under a married woman's certificate. Profits from the business were deposited in the wife's name to prevent attachment by the husband's creditors. After returning to New York because

of illness, the defendant through a friend, Goldman, learned of the opportunity for an automobile agency in Boston. Mrs. Pollack supplied a portion of the money for the enterprise from a checking account which she had in a New York bank and from loans made to her by friends. The defendant on August 15, 1949, executed assignments to his wife of the shares which he purported to hold for her. Although the evidence of the issuance of the stock in both corporations to the defendant and of representations made to the Chrysler Corporation as to the ownership of that stock pointed to the defendant as the owner of the stock, we think the judge was justified in finding that from the beginning the true ownership of the stock which is here in question was in Mrs. Pollack and that no fraud was committed against the defendant's creditors. The findings import the creation of an oral trust of the shares at the time the corporations were organized for the benefit of Mrs. Pollack and the others who had advanced money to establish the agency. As the defendant had only a bare legal title to the shares his subsequent assignments of them to the persons equitably entitled did not diminish his estate and were not a fraud on his creditors. *Stratton* v. *Edwards*, 174 Mass. 374. *Bailey* v. *Wood*, 211 Mass. 37. *Hutchins* v. *Mead*, 220 Mass. 348. *Liberty Trust Co.* v. *Hayes*, 244 Mass. 251. *Ferguson* v. *Winchester Trust Co.* 267 Mass. 397. Whether excise stamps were affixed to the assignments under the stock transfer statute (G. L. [Ter. Ed.] c. 64, §§ 1, 8[1]) is immaterial. The case of the defendant depends on the creation of the trust, not on the validity of a subsequent attempt to execute it by transfer of the trust res.

We find nothing in the testimony of Mrs. Pollack which supports the plaintiff's contention that as matter of law a finding was required that it was the defendant's money which was paid for the issuance of the stock.

The bill should not have been dismissed as to the defendant Herman C. Pollack. The judge has found that the plain-

---

[1] See now St. 1954, c. 353, § 1.

tiff has a judgment against this defendant which is unsatisfied in the amount of $4,549.50. The final decree is to be modified by establishing the amount of this defendant's indebtedness and ordering him to pay such amount with interest to the plaintiff. As so modified the decree is affirmed. The other defendants are entitled to be paid the costs of this appeal.

*So ordered.*