MASSACHUSETTS ELECTRIC COMPANY *vs.* PACIFIC NATIONAL
INVESTMENT CORPORATION & others[1]
(and a companion case[2]).

Bristol.    April 22, 1980. — May 19, 1980.

Present: GREANEY, PERRETTA, & KASS, JJ.

*Fraudulent Conveyance.   Evidence,* Fraud.

In an action by creditors of a corporation alleging that certain real estate
conveyances made by the corporation constituted fraudulent transfers
prohibited by G. L. c. 109A, §§ 4 and 7, the judge was warranted in
finding that the conveyances were made as part of a financing scheme
and not with an actual intent to defraud creditors within the meaning
of § 7 and that there was insufficient proof, as required by § 4, that
the conveyances rendered the corporation insolvent.  [753-754]

CIVIL ACTIONS commenced in the Superior Court on December 30, 1975, and March 29, 1976, respectively.

The cases were heard by *O'Leary*, J., a District Court judge sitting under statutory authority.

*Robert K. Cunningham* for the plaintiffs.

*Henry G. Barrett* for Michael T. Hull.

GREANEY, J.  By their action the plaintiffs, creditors of the defendant, Pacific National Investment Corporation (Pacific), sought equitable relief with regard to certain real estate conveyances made by Pacific to the defendants Hull and Yeghian between December, 1973, and May, 1975, on the ground that the conveyances constituted fraudulent transfers prohibited by G. L. c. 109A, §§ 4 and 7.  After a trial in the Superior Court, the judge made findings of fact and rulings of law and concluded that the questioned convey-

---

[1] Michael T. Hull and Ernest Yeghian, Jr.

[2] The companion case was brought by Reid's TV and Appliances, Inc., against the same defendants.

ances were not fraudulent within the meaning of the statute. There was no error.

1. The judge's subsidiary findings of fact will not be set aside unless they are found to be clearly erroneous. Mass.R. Civ.P. 52(a), 365 Mass. 816-817 (1974). In a case such as this where the accuracy of the findings depends upon the credibility of the oral testimony, the conclusions of the judge who saw and heard the witnesses must be given due weight (*New England Canteen Serv., Inc.* v. *Ashley*, 372 Mass. 671, 675 [1977]), and we will not disturb any facts resolved on the basis of the judge's assessment of credibility.

There is no real dispute that the plaintiffs are creditors, that the obligations due them from the corporate defendant are debts, and that the questioned transfers are conveyances, all within the scope of the definitions contained in c. 109A, § 1. To prevail under § 7 of the act, it had to be established that the conveyances were made with "actual intent . . . to hinder, delay or defraud either present or future creditors . . . ." "Generally the question of fraud is one of fact. It must be proved." *Brown* v. *Little, Brown & Co.*, 269 Mass. 102, 117 (1929). *Kerrigan* v. *Fortunato*, 304 Mass. 617, 620 (1939). On this point, the judge made subsidiary findings that Pacific was a relatively new corporation; that it had difficulty obtaining financing for its various construction projects; that "[t]o secure such financing [it] conveyed properties to [the individual defendants] as joint tenants"; and that "[o]nce construction mortgage financing had been secured the proceeds would be assigned to Pacific." He concluded that an actual intent to defraud creditors had not been demonstrated. The findings were based on the judge's belief of testimony by the defendant Hull. They are further supported by documentary evidence as to a series of conveyances culminating in a mortgage to the First Bristol County National Bank, which can be taken as consistent with the somewhat convoluted financing theory espoused by the defendants. Whatever skepticism we might harbor about the plausibility of Hull's explanation for the conveyances, the findings and conclusion on this aspect of the case present

essentially issues of fact which are dependent on the judge's acceptance of oral testimony; as such, they will not be set aside here.

To prevail under § 4, proof was necessary that the conveyances were made without fair consideration and that the transfers had the effect of rendering Pacific insolvent. *Ward* v. *Grant, ante* 364 (1980). We need not reach the fair consideration question because the element of insolvency as defined by G. L. c. 109A, § 2(1), was not established. Based on the virtual absence of evidence that the conveyances had left "the corporation with unreasonably small capital" (*Widett* v. *George*, 336 Mass. 746, 751 [1958]), and testimony that Pacific, despite the questioned conveyances, was left with "many other deeds in the Registry," including, during the material times, a substantially completed fifty-four unit apartment complex, the judge could reasonably have concluded that the evidence was "not sufficient to show that by the conveyances the defendant . . . was rendered insolvent as to creditors, without regard to . . . actual intent, within the provisions of § 4, nor that [the defendant] intended or believed that [it] would incur debts beyond [its] ability to pay as they matured." *Kerrigan* v. *Fortunato*, 304 Mass. at 621.

2. We briefly discuss the plaintiffs' remaining contentions.

(a) The evidence that the corporation filed certificates of condition on February 12, 1976, with the State Secretary for the fiscal years 1972, 1973, and 1974, which listed a "total" of zero assets and zero liabilities does not necessarily establish that Pacific was insolvent during those years. The judge could have found that these exhibits were of minimal probative value in view of the basically neutral character of the entries, the lack of any other information in the sundry columns pertaining to various assets and liabilities, the testimony that the corporation was loosely run, and the testimony by the defendant Hull that the certificates were prepared and filed to avoid its dissolution for inactivity (G. L. c. 155, § 50A), because "there was so much real estate in the corporation . . . with the advice of the accountant that we would file an amended one at a later date . . . ."

(b) The judge did not err in taking oral testimony to explain the recitation as to consideration found on several of the deeds. The essence of a lawsuit under G. L. c. 109A is to establish fraud, and the admission of extrinsic evidence bearing on that question does not violate the parol evidence rule. *Bates* v. *Southgate*, 308 Mass. 170, 183 (1941). 3 Corbin, Contracts § 580 (1960). 4 Williston, Contracts § 631, at 950, § 634, at 1017-1020 (3d ed. 1961).

(c) There was ample evidence to establish that Pacific, after the early stages of its incorporation, was more than a nominee for the individual defendants. On the evidence, the judge properly rejected the plaintiff's argument that "Pacific's acting as nominee . . . bears upon unjust enrichment and corporate immunity . . . and . . . is a basis for finding fraud."

(d) The transcript reveals that the plaintiffs' counsel was afforded an adequate opportunity in the course of the trial to examine the corporation's documents and records produced in response to the subpoena duces tecum served upon its officers.

(e) In view of the judge's explicit findings devoted exclusively to the questions tried under G. L. c. 109A, and the lack of any request for an amendment of those findings or for supplemental findings, we see no reason to entertain the plaintiffs' arguments that they should be entitled "to recover under the theory of conversion or of implied contract," or that "corporate immunity should be set aside." These theories, for what they are worth, were at best inchoate at the trial and now fall into the category of claims which cannot be properly raised for the first time on appeal because of the lack of proper foundation in the trial court. See *Michaelson* v. *Nemetz*, 4 Mass. App. Ct. 806, 807 (1976); *Gerber* v. *Ty-Data, Inc.*, 5 Mass. App. Ct. 898-899 (1977).

The judgments entered in the Superior Court are modified by striking in each judgment the words "of dismissal." As so modified, the judgments are affirmed.

*So ordered.*